

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00724-CV

**SAN ANTONIO INDEPENDENT SCHOOL DISTRICT**,
Appellant

v.

Laura **BECERRA**, as Next Friend of J.C., a Minor,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2025-CI-24418
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:  Lori I. Valenzuela, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Lori I. Valenzuela, Justice
Velia J. Meza, Justice

Delivered and Filed: August 5, 2026

REVERSED AND RENDERED

Appellant San Antonio Independent School District ("SAISD") appeals the trial court's denial of its plea to the jurisdiction, which sought the dismissal of claims that appellee Laura Becerra filed against SAISD on behalf of her son, J.C.[1] We reverse the trial court's order and render judgment dismissing Becerra's claims against SAISD.

---

[1] To protect J.C.'s privacy, we will refer to him only by his initials. *See* TEX. R. APP. P. 9.9(a)(3).

## BACKGROUND

At the outset of this dispute, J.C. was a fifth grader at SAISD's Mark Twain Dual Language Academy. On September 10, 2025, another child's parent reported that J.C. had brought a knife to school the previous day.[2] When assistant principal Sarah Harrell questioned J.C. about this allegation, she learned that he once again had the knife at school. Both Harrell and an SAISD police officer examined the knife, which turned out to be a Montessori knife meant to teach children to cut fruits and vegetables. During the meeting with Harrell, J.C. submitted a handwritten statement that said:

> So I accidently [*sic*] brought my knife so I used it to cut my fruit and carrot and I helped my [friends] cut [their] fruit as well and we just talked for the rest of lunch. I was going to use it for a game but I didn't and I just tagged them on the shoulder.

Harrell did not inform J.C.'s parents about the incident before she talked with him and collected his written statement.

After meeting with J.C., Harrell notified his parents about the issue and suspended J.C. from school for two-and-a-half days. Principal David Garcia then informed the campus community about the incident via email. In his email, Garcia stated, "District protocols were followed, and an investigation determined [J.C.] had no intention to harm anyone."

---

[2] The record in this appeal shows that SAISD policy defines three different categories of knives:

- "Location-Restricted Knife," which is "[d]efined by the [Texas] Penal Code as a knife with a blade over 5 ½ inches."

- "Prohibited Weapon," which is defined as "[a] dagger or similar knife . . . . The length of the blade is not a factor in identifying these knives, since they are identified by their design and features."

- "Other Knives," which are defined as "any other knife, with a blade length up to and including 5 ½ inches[.]"

SAISD policy also provides that "[p]ossessing, using, or exhibiting <u>any</u> knife is prohibited by the SAISD Student Code of Conduct." (emphasis in original). Possession of "location-restricted" knives and "prohibited weapons" are defined as Level IV, expulsion-level offenses, while possession of "other knives" "may be considered to be a violation of a Level III offense, resulting in DAEP placement, or Level II offense, generally resulting in suspension from school or other serious consequences." The Montessori knife at issue here appears to fall under the definition of "other knives."

J.C. returned to school at Twain after serving his suspension. After he returned to school, he wrote notes to other students that read "Hate you now," "[W]e are not friends," and "[F]ound a [phone] number to leak hehe[.]" The record appears to indicate that J.C. attempted to distribute at least some of these notes to their intended recipients, but it does not indicate whether he succeeded.[3]

As part of her review of this incident, Harrell prepared a Critical Incident Report and forwarded it to an SAISD hearing officer, Elisa Zavala. After reviewing the Critical Incident Report, Zavala notified J.C.'s home campus, Twain—which in turn notified J.C.'s parents—that SAISD would hold a hearing on whether to refer J.C. to SAISD's Disciplinary Alternative Education Program ("DAEP"). Neither Assistant Principal Harrell nor Principal Garcia participated in the decision to hold a DAEP hearing.

J.C. and his parents appeared at the hearing and presented evidence on his behalf. At the end of the hearing, Zavala found that J.C. had violated SAISD's Student Code of Conduct by possessing a knife and "engag[ing] in unruly, disruptive, disrespectful, or abusive conduct that substantially interferes with the orderly operation of the classroom, campus or District-related activity[.]" She signed an order placing J.C. in DAEP for 25 days. Although it is undisputed that J.C. does not have any disabilities, a checklist on Zavala's order indicated that she made her decision after considering "[d]isability that interferes with student's ability to appreciate the wrongfulness of the student's conduct." Additionally, Zavala's checklist did not indicate that she reviewed "[s]upporting documents provided by parent and/or guardian," even though it is undisputed that J.C.'s parents submitted evidence at the hearing. Zavala later testified that this was a clerical error and that she did review the materials submitted by J.C.'s parents.

---

[3] Garcia testified that "a couple of" the notes were confiscated from another student who stated that J.C. had asked him to deliver them.

On September 26, 2025, Becerra filed a "Level One" grievance with SAISD,[4] which asked the district to suspend enforcement of the DAEP placement pending the outcome of the grievance process. Julissa Herrera, who is SAISD's executive director for policies, procedures, and public information, informed Becerra by email that SAISD's "board policy does not provide the suspension of campus or district actions during the grievance process." Herrera later testified that this email was the full extent of her involvement in this matter and that she had no role in either the DAEP hearing or the decision to refer J.C. to DAEP.

On October 15, 2025, Becerra sued SAISD, Herrera in her official capacity, and Garcia in his official capacity. Becerra's petition alleged violations of J.C.'s due process rights under article I, section 19 of the Texas Constitution; "arbitrary [and] capricious use of discretionary authority"; and ultra vires actions. She sought a temporary restraining order, a temporary injunction, and attorney's fees. In response, SAISD, Herrera, and Garcia filed a plea to the jurisdiction, which argued that Becerra's claims against them were barred by governmental immunity because: (1) SAISD's disciplinary decisions are not subject to judicial review; (2) referral to a DAEP program does not affect a protected property interest and therefore does not trigger due process concerns; and (3) neither Herrera nor Garcia "had any involvement in the decision to place [J.C.] in DAEP."

The trial court held a two-day hearing on SAISD's plea to the jurisdiction, at which it heard live testimony from Herrera, Garcia, Harrell, and Zavala and received documentary evidence. After considering the pleadings and evidence, the trial court verbally dismissed the claims against Herrera and Garcia "without prejudice to amending of pleadings if that's something that's warranted as the discovery process continues." It signed a written order denying the plea to the

---

[4] Although Becerra's appellate briefing makes factual representations about the progress of the grievance process, the record is largely silent on that issue.

jurisdiction "as to [SAISD] only."[5] SAISD then timely filed this interlocutory appeal. *See* TEX.

CIV. PRAC. & REM. CODE § 51.014(a)(8).

**ANALYSIS**

***Becerra's Cited Authority***

We begin by noting that Becerra's appellee's brief cites eight judicial opinions, four of

which appear to be hallucinations created by generative artificial intelligence:

- "*Alief Independent School District v. Lozano*, 543 S.W.3d 118 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)," cited on page 23 of Becerra's brief, does not exist. The citation 543 S.W.3d 118 leads to a 2018 opinion from a Missouri court of appeals. *See Payne v. Fiesta Corp.*, 543 S.W.3d 109, 118 (Mo. App. E.D. 2018). Despite a thorough search of Westlaw and the websites of the Houston courts of appeals, we have been unable to locate any appellate opinions in which Alief Independent School District was opposed by a party named Lozano. SAISD's reply brief expressly identifies this citation as a hallucination.

  Becerra cites this hallucination for the proposition that "Texas courts have recognized that interference with a student's educational rights can give rise to a justiciable injury," and she identifies it as "finding jurisdiction where a district acted beyond its authority in removing a student from a program without due process." In other words, Becerra relies on this hallucination as a core part of her argument to this court. She does not offer any further authority to support the propositions she attributes to this hallucination.

- "*Hoffman v. ESD 48*, No. 01-14-00676-CV (Tex. App.—Houston [1st Dist.] 2015, pet. denied)," cited on page 22 of Becerra's brief, does not exist. Our searches of Westlaw and the website for the Houston First Court of Appeals show that cause number 01-14-00676 was assigned to a criminal case in the relevant year. *See Alcaraz v. State*, 481 S.W.3d 712 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We have not found any Texas appellate opinions involving the named parties.

- "*Neely v. West Orange-Cove Consol. ISD*, No. 09-17-00196-CV (Tex. App.—Beaumont 2018, no pet.)," cited on page 21 of Becerra's brief, does not exist. Our searches of Westlaw and the website for the Beaumont Court of Appeals show that cause number 09-17-00196 was assigned to a criminal case in the relevant year. *See Munn v. State*, No. 09-17-00196-CV, 2018 WL 5623689 (Tex. App.—Beaumont Oct. 31, 2018, no pet.) (mem. op., not designated for publication). While there are two Texas cases that carry the style *Neeley v. West Orange-Cove Consolidated Independent School District*, those opinions revolve around the constitutionality of Texas's public school finance system and an award of attorney's fees arising out of that dispute. They do not involve student discipline or other

---

[5] The trial court also signed a temporary restraining order that, *inter alia*, enjoined SAISD from enforcing the DAEP order. The temporary restraining order expired under its own terms on November 3, 2025, before SAISD filed its notice of appeal.

issues relevant to this case. *See Neeley*, 176 S.W.3d 746, 751 (Tex. 2005); *Neeley*, 228 S.W.3d 864, 865–866 (Tex. App.—Austin 2007, pet. denied).

- "*Cutrer v. Tarrant County College District*, 943 F.3d 265 (5th Cir. 2019)," cited on page 21 of Becerra's brief, appears to be an attempt to cite a Fifth Circuit opinion styled *Cutrer v. Tarrant County Local Workforce Development Board*, 943 F.3d 265 (5th Cir. 2019). Becerra's brief states that *Cutrer* "involved a college student's expressive conduct and campus restrictions[.]" This is not correct. *Cutrer* is an employment discrimination dispute that does not involve any school law, expressive conduct, or campus restriction issues. *See generally* 943 F.3d at 267–68.

Becerra contends that she cited the *Hoffman*, *Neely*, and *Cutrer* hallucinations identified above to refute SAISD's own reliance on those citations. But SAISD did not cite any of these fictitious opinions in either its appellate briefing or its trial court filings. It is therefore unclear why Becerra decided to include these hallucinations in her brief.

We have previously warned litigants that generative artificial intelligence tools "lack the ability to produce reliable and accurate citations to legal authorities." *See Suday v. Suday*, No. 04-23-00836-CV, 2026 WL 100418, at \*1 n.3 (Tex. App.—San Antonio Jan. 14, 2026, pet. filed) (mem. op.); *AGiza v. Franklin*, No. 04-25-00099-CV, 2025 WL 2058089, at \*2 n.1 (Tex. App.—San Antonio July 23, 2025, pet. denied) (per curiam) (mem. op.). We once again repeat that admonition. We also feel compelled to remind licensed attorneys, including Becerra's counsel in this appeal, that they owe both a duty of candor to this court and a duty of competence to their clients. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.01 cmt. 6; *id.* R. 3.03(a)(1). Reliance on fictitious citations and inaccurate representations about the contents of an opposing party's brief are inconsistent with both of these duties.

In light of these hallucinations, we have considered whether to strike Becerra's brief "and proceed as if [she] had failed to file a brief." *See* TEX. R. APP. P. 38.9; *Suday*, 2026 WL 100418, at \*1 n.3; *see also Nellis v. Haynie*, 596 S.W.3d 920, 922 n.2 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (noting that when "an appellee does not file a brief, the appellate court may accept

any factual statement made in the appellant's brief as true"). However, we will proceed to the merits of this appeal without taking further action on this issue. We nevertheless caution Becerra's counsel that we will not tolerate similar issues in any future appearances before this court.

### *Limitations on Our Review*

We begin our merits review by noting there is a balance between necessary safety precautions that a school must take and the risk of excessive punishment imposed for violating such safety rules. That balance can be reviewed when a school takes steps to suspend or expel a student, and there often exists an appellate process embedded in the school's protocols, including final decision-making for alleged excessive punishment. Under SAISD's internal procedures, the duty to perform that appellate review falls on SAISD's Board of Trustees. Our role in this appeal is to determine whether the trial court properly denied SAISD's plea to the jurisdiction and nothing else. We make no comment on SAISD's appellate process or the outcome of Becerra's appeal pursuant to that internal district process.

### *Standard of Review*

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Because sovereign immunity "defeats a trial court's subject matter jurisdiction," it "is properly asserted in a plea to the jurisdiction." *Id.* at 225–26.

This court reviews a trial court's ruling on a plea to the jurisdiction de novo. *City of San Antonio v. Summerglen Prop. Owners Ass'n Inc.*, 185 S.W.3d 74, 83 (Tex. App.—San Antonio 2005, pet. denied). A plaintiff who sues a governmental entity has the burden to plead facts that affirmatively show a waiver of immunity. *Val Verde Hosp. Dist. v. Salazar*, 708 S.W.3d 759, 761–62 (Tex. App.—San Antonio 2025, no pet.). In determining whether the plaintiff has met that

burden, the reviewing court must "construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda*, 133 S.W.3d at 226. When a jurisdictional plea challenges the pleadings, we must determine "if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case[.]" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018). If the pleaded facts do not affirmatively demonstrate the trial court's jurisdiction but also do not reveal incurable jurisdictional defects, the plaintiff should be allowed to amend. *Id.* However, "if the pleadings affirmatively negate the existence of jurisdiction, such that it is impossible to amend the pleadings to invoke jurisdiction, the plea may be granted and the suit dismissed without allowing the plaintiffs an opportunity to amend." *Id.*

### Ultra Vires

#### Applicable Law

"Absent a statutory waiver of immunity by the Legislature," a plaintiff's claim against a governmental employee can proceed only if the employee's actions "were *ultra vires*—without state authority." *Hall v. McRaven*, 508 S.W.3d 232, 234 (Tex. 2017); *see also Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011). A governmental employee commits ultra vires acts if he acts without legal authority, if he fails to perform a purely ministerial act, "or if his acts conflict with the law itself." *Hall*, 508 S.W.3d at 238; *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). Importantly, however, an ultra vires suit "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009).

#### Application

The order SAISD challenges in this appeal does not explicitly adjudicate the claims against its employees, Herrera and Garcia. While the reporter's record shows the trial court verbally dismissed the claims against Herrera and Garcia, the clerk's record does not contain a written order

to that effect. However, both SAISD and Becerra represented to this court that the trial court dismissed those claims. Neither side raises any appellate complaints about that dismissal, and Herrera and Garcia are not parties to this appeal. If any ultra vires or other claims against Herrera and Garcia remain pending below, those claims are not before us, and we express no opinion as to their validity or the trial court's jurisdiction over them.

The challenged order denied the plea to the jurisdiction "as to [SAISD] only" without identifying any specific claims. If the trial court intended to retain jurisdiction over an ultra vires claim against SAISD as an entity, it erred. As noted above, an ultra vires claim will not lie against a governmental entity. *See, e.g.*, *Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76 (Tex. 2015); *Heinrich*, 284 S.W.3d at 373; *Suarez v. Silvas*, 613 S.W.3d 549, 557 (Tex. App.—San Antonio 2020, no pet.). Such claims may only be brought "against the appropriate state officials in their official capacities." *Patel*, 469 S.W.3d at 76 (citing *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258–59 (Tex. 2010) (per curiam)). We therefore reverse the trial court's order as to the ultra vires claim against SAISD and render judgment dismissing that claim. *See Reconveyance*, 306 S.W.3d at 259.

### *Judicial Review of Assignment to DAEP*[6]

#### *Applicable Law*

Chapter 37 of the Texas Education Code codifies standards for student codes of conduct and behavior management in Texas public schools. *See generally* TEX. EDUC. CODE §§ 37.001–.028. "Because [J.C.]'s placement in the alternative education program was not an expulsion, review of [SAISD]'s decision is governed by section 37.009(b)." *Flour Bluff Indep. Sch. Dist. v.*

---

[6] In her appellate briefing, Becerra appears to challenge both the referral to DAEP and the initial two-and-a-half day suspension. However, her live petition challenged only the referral to DAEP. As a result, SAISD did not seek the dismissal of any claims arising out of the initial suspension, and the trial court did not consider or rule on any such claims. We therefore will not consider Becerra's appellate arguments on that point.

*R.S.*, No. 13-05-00623-CV, 2006 WL 949968, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 12, 2006, no pet.) (mem. op.); *see also* TEX. EDUC. CODE §§ 37.006 (establishing requirements for placement in DAEP program), 37.009 (conference, review, and hearing requirements that apply when student is removed from class under section 37.006).

Several Texas courts have held that under the plain language of section 37.009, "disciplinary actions involving mere placement in an alternative education program are not reviewable by a court of law." *Hankins v. P.H.*, 1 S.W.3d 352, 354 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied); *see also Nw. Indep. Sch. Dist. v. K.R.*, No. 02-20-00067-CV, 2020 WL 4907331, at *4 (Tex. App.—Fort Worth Aug. 20, 2020, no pet.) (mem. op.); *Stephens v. Trinity Indep. Sch. Dist.*, No. 12-12-00094-CV, 2012 WL 5289346, at *2–3 (Tex. App.—Tyler Oct. 24, 2012, no pet.) (mem. op.); *In re Vidor Indep. Sch. Dist.*, No. 09-10-00558-CV, 2010 WL 5232996, at *4 (Tex. App.—Beaumont Dec. 13, 2010, orig. proceeding) (per curiam) (mem. op.); *Flour Bluff*, 2006 WL 949968, at *2; *Sutton v. Katy Indep. Sch. Dist.*, 961 S.W.2d 216, 217–18 (Tex. App.—Houston [1st Dist.] 1997, no writ) (considering predecessor to section 37.009). These cases hold that a trial court lacks jurisdiction to consider a claim that challenges a student's referral to DAEP. *See Flour Bluff*, 2006 WL 949968, at *2.

*Application*

Becerra's petition alleged that SAISD did not comply with the statutory requirements of sections 37.006 and 37.009 and that its decision to assign J.C. to DAEP was therefore an arbitrary and capricious use of discretionary authority. As support for this contention, she argued the knife J.C. brought to school "was a Montessori educational tool, not a weapon"; J.C.'s "intent was innocent and educational, not malicious"; "[t]he incident was at most a developmental misunderstanding" to which the assessed punishment "bears no reasonable relation"; and SAISD "appl[ied] a blanket punishment designed for much more serious misconduct" instead of

considering "statutory mitigating factors." She also argued that DAEP placement is only authorized "where a student's conduct is *seriously disruptive* or presents a *danger* to persons or property." (emphasis in original).

These allegations directly challenge the merits of SAISD's disciplinary decision. Because the trial court lacks jurisdiction to consider such a challenge, these allegations affirmatively negate the existence of jurisdiction. *See, e.g.*, *Stephens*, 2012 WL 5289346, at *3; *Flour Bluff*, 2006 WL 949968, at *2; *see also Meyers*, 548 S.W.3d at 486. The trial court thus erred by denying SAISD's plea to the jurisdiction as to the merits of the disciplinary decision. *See, e.g.*, *Stephens*, 2012 WL 5289346, at *3; *Flour Bluff*, 2006 WL 949968, at *2.

### *Due Process*

#### *Applicable Law*

"Even if there is no jurisdiction to review complaints arising out of the statutory rights in Chapter 37 of the Texas Education Code, an appellate court has jurisdiction to determine whether the complained of action violates the student's constitutional rights." *K.R.*, 2020 WL 4907331, at *3. The United States Supreme Court has held that under the Fourteenth Amendment's due process clause,[7] public school districts may not impose discipline that deprives a student of his right to an education without first providing him with notice and a hearing. *See Goss v. Lopez*, 419 U.S. 565, 574–76 (1975).

"But for a court to have jurisdiction of constitutional claims against a governmental entity, the constitutional claims must be 'viable.'" *K.R.*, 2020 WL 4907331, at *3. A governmental entity's "immunity from suit is not waived if the constitutional claims are facially invalid." *Id.* In

---

[7] While Becerra's appellate briefing raises due process arguments "under both the Fourteenth Amendment to the U.S. Constitution and Article I, Section 19 of the Texas Constitution," her trial court pleadings did not raise any federal due process claims.

the context of a due process claim under article I, section 19 of the Texas Constitution, this means that the plaintiff must allege that the challenged action affected a protected property or liberty interest. *Id.* at \*4, \*6. "[P]rotected property rights are affected and due process protections are required when the discipline imposed amounts to a *deprivation of access* to education." *Riggan v. Midland Indep. Sch. Dist.*, 86 F. Supp. 2d 647, 655 (W.D. Tex. 2000) (emphasis added).

*Application*

Becerra alleged that J.C.'s referral to DAEP impacted a protected property interest because it deprived him of participation in the dual-language program he attended at Twain. But the record shows that J.C. "is not being denied access to public education, not even temporarily. He was only to be transferred from one school program to another program with stricter discipline." *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997). Texas courts have held that "a student's transfer to an alternative education program did not implicate due process protection and a liberty or property interest was not taken" by a referral to a program like DAEP. *See K.R.*, 2020 WL 4907331, at \*6; *Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 563 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Becerra has not cited any authority holding that a temporary disciplinary transfer out of a specialized program deprives a student of access to an education, and we have not found any. *See Stafford*, 64 S.W.3d at 563 (student's allegation "that he was not provided with an 'appropriate education'" did not implicate a protected property interest); *see also Nevares*, 111 F.3d at 27 ("We have previously held that no protected property interest is implicated in a school's denial to offer a student a particular curriculum."). This claim therefore does not allege a constitutionally protected property interest. *See K.R.*, 2020 WL 4907331, at \*6–7.

When read in the light most favorable to Becerra, as the applicable standard of review requires, the petition also appears to allege that the referral to DAEP impacted J.C.'s liberty interest in his reputation. The *K.R.* court rejected a similar assertion, noting that "reputation alone is not

entitled to due process protection." *Id.* at \*5. "Only when [reputation] is coupled with a 'more tangible interest such as employment' is it worthy of due process protection." *Id.* (quoting *Bd. of Trs. of Galveston Wharves v. O'Rourke*, 405 S.W.3d 228, 237–38 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Accordingly, the reputational claim will not support the trial court's exercise of jurisdiction in this matter.

After reviewing the record and the applicable law, we conclude that Becerra did not allege any impact to a protected property or liberty interest and therefore did not plead a viable due process claim. *See K.R.*, 2020 WL 4907331, at \*5–7. Consequently, the trial court erred by denying SAISD's plea to the jurisdiction as to that claim.

## CONCLUSION

We reverse the trial court's order denying SAISD's plea to the jurisdiction and render judgment dismissing Becerra's lawsuit against SAISD.

Lori I. Valenzuela, Justice